UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN CHANEY<br>                     Plaintiff,<br>v.<br><br>KEEGO HARBOR POLICE<br>DEPARTMENT and OFFICER<br>RICHARD LINDQUIST,<br>                     Defendants.<br>_____/ | Case No.: 21-11662<br><br>Nancy G. Edmunds<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**ORDER DENYING DEFENDANTS' MOTION TO COMPEL (ECF No. 25) AND GRANTING THIRD PARTY'S MOTION FOR A PROTECTIVE ORDER (ECF No. 27)**

Plaintiff Brian Chaney filed this civil rights matter on July 16, 2021, against the Keego Harbor Police Department ("KHPD") and Officer Richard Lindquist, acting in his individual and official capacity. (ECF No. 1, PageID.2). Plaintiff alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution and tort claims under Michigan law pursuant to a July 14, 2021, interaction between Defendant Lindquist and Plaintiff. (*Id.* at PageID.5-6). This matter is presently before the Court on Plaintiff's motion to compel and third-party Kelly Turner's motion for protective order. (ECF No. 25; ECF No. 27). For the reasons discussed below, the Court **DENIES** Plaintiff's motion to compel Defendant to produce audio recorded statements and notes associated with said recording. (ECF No. 25, PageID.149). The Court **GRANTS** witness Kelly

1

Turner's motion for a protective order allowing Turner to answer all deposition questions in writing only with assistance from her attorney, rather than an in person or zoom deposition. (ECF No. 27, PageID.167, PageID.171).

## I. DISCUSSION

### a. Motion to Compel

Counsel for Defendant KHPD interviewed Ms. Kelly Turner on August 11, 2021, because she allegedly witnessed the events at issue in this suit. (ECF No. 29, PageID.191). Plaintiff asserts that T. Joseph Seward, counsel for KHPD, recorded this interview and made notes contemporaneously as Turner gave her statement. (*Id.*; ECF No. 25, PageID.155).

Plaintiff asserts that he requested production of Mr. Seward's recording "on multiple occasions" and that Defense counsel has "refused and objected, claiming that the statement and notes are attorney work product." (ECF No. 25, PageID.155). Plaintiff's argument is that the recorded statement and notes are not attorney work product and are, therefore, discoverable. (*Id.* at PageID.156-57). Plaintiff suggests that defendant may argue that the same information could be obtained by other means, but this is mitigated because "Plaintiff has very good reason to believe that there is content within Turner's statements that further supports Plaintiff's claims that Plaintiff would not know of without a copy of the witnesses' audio recorded statement and the notes thereof." (*Id.* at PageID.157).

2

In response, Defendant argues that Plaintiff's motion should be denied as Plaintiff has not complied with local rules related to discovery because Plaintiff has not made a proper discovery request as is required by local rule 37.2. (ECF No. 29, PageID.192-93). Local Rule 37.2 requires a party to submit a verbatim recitation or copy of the discovery request at issue, but according to Defendant, Plaintiff did not serve a request for the recording. Similarly, Defendant KHPD contends that Plaintiff's motion is improper under the Federal Rules of Civil Procedure because motions to compel are authorized where a deponent fails to respond under Rule 30 or 31, a corporation fails to make a designation under Rule 30, a party fails answer an interrogatory under Rule 33, or a party fails to produce documents under Rule 34, none of which have occurred here. (*Id.* at 193-95). Defendant KHPD argues that there is no basis for the motion to compel as Plaintiff has submitted no interrogatories to KHPD and Plaintiff's only set of Requests to Produce do not mention Ms. Turner. (*Id.*). Defendant KHPD asserts that KHPD has provided Ms. Turner's contact information and Plaintiff may conduct their own discovery of Ms. Turner. (*Id.*). Finally, KHPD contends that Plaintiff has not demonstrated under the relevant framework that he is entitled to Defendant's work product prepared in anticipation of litigation. (*Id.* at PageID.196).

Plaintiff filed a reply brief on this issue on August 18, 2022, raising the same arguments as in his motion to compel as well as arguing that Defendants are under

an affirmative duty to provide the recording without a discovery request under Fed. R. Civ. P. 26(a)(1)(A)(ii). (ECF No. 32, PageID.319); Fed. R. Civ. P. 26(a)(1)(A)(ii) ("a party must, without awaiting a discovery request, provide to the other parties. . . a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment").

To cure any failure to comply with local rule 37.2, Plaintiff provides the language used in Plaintiff's First Request for the production of documents: "Please provide a copy of any and all dispatch tapes/recordings, body cam footage, and or records pertaining to the stop, question and/or detention of Brian Chaney on or around July 14, 2021." (*Id.* at PageID.319; ECF No.32, PageID.331); (E.D. Mich. Local Rule 37.2 requires a party to submit a verbatim recitation or copy of the discovery request at issue).

Federal Rule of Civil Procedure 26(b) controls the scope of discovery and it provides that for good cause shown parties may discover any subject matter, not privileged, that is relevant to a claim or a defense in the action. Fed. R. Civ. P. 26(b). To determine whether a document was prepared "in anticipation of litigation" and constitutes protected work product, the Sixth Circuit explained that the Court should begin with a two-part analysis into "(1) whether that document

was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (internal citations omitted).

Materials protected by the work-product doctrine may still be ordered disclosed where the requesting party establishes it has a substantial need for the materials and cannot obtain equivalent information through other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A); *Hickman v. Taylor*, 329 U.S. 495, 508–12 (1947); *Stampley v. State Farm Fire & Cas. Co.*, 23 F. App'x 467, 470 (6th Cir. 2001); *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) ("So-called 'fact' work product, the written or oral information transmitted to the attorney and recorded as conveyed by the client, may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. However, absent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.") (internal quotation marks and citations omitted).

Plaintiff, however, argues the Court should consider that:

> documents and recordings which do not represent an attorney's judgments and theories are not protected by the work-product doctrine. A recording of a witness's statement does not constitute work product because

5

> verbatim recordings do not contain the types of 'mental impressions, conclusions and opinions' typically protected by the work product doctrine.

*Zimmerman v. Wells Fargo Advisors, LLC*, No. 15-CV-14311, 2016 WL 11601249, at *3 (E.D. Mich. Feb. 8, 2016) (internal quotations omitted) (quoting *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 1790189, at *10 (E.D. Mich. May 10, 2011)). Some courts in the Sixth Circuit and elsewhere have compelled production of recordings of non-party witness statements under this same logic. *Nam v. U.S. Xpress, Inc.*, No. 1:11-CV-116, 2012 WL 12840094, at *2 (E.D. Tenn. May 15, 2012) (collecting cases). In this line of cases, courts appear to distinguish between trial preparation materials and work product—often basing decisions turning over witness statements on the lack of mental impressions, conclusions, opinion, etc. which are characteristic of opinion work product. *Mitchell v. Archer Daniels Midland Co.*, 329 F.R.D. 178, 181 (E.D. Tenn. 2019) (analyzing the state of case law surrounding witness statements).

Yet in reaching this conclusion, courts fail to engage in analysis of whether these witness interviews constitute *trial preparation materials*—a failure which "seems to be a departure from the express procedure set forth in Fed. R. Civ. P. 26(b)(3)[.]" (*Id.*). The result is a much-muddled field of law related to what is considered trial preparation materials, what is considered work product, what is fact work product, and what is opinion work product.

6

The initial discoverability of trial preparation materials "does not turn upon the degree to which those materials reflect mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." (*Id.*) (internal quotations omitted).  All trial preparation materials prepared in anticipation of litigation are governed by Rule 26(b)(3)(A) and are "generally not discoverable.  And, that is true whether the recordings contain attorney mental impressions or whether they do not." (*Id.*).  Only after materials are classified as trial preparation materials should the court turn to whether an exception applies because the statements are relevant and the defendants have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." (Fed. R. Civ. P. 26(b)(3)(A)(ii)); *Mitchell*, 329 F.R.D. at 181.

The interview of Ms. Turner occurred after the suit had been filed. (ECF 29, PageID.191).  Defendants submitted an affidavit that the purpose of the interview with Ms. Turner "was to seek information, in preparation for trial," demonstrating their subjective anticipation of litigation. (ECF No. 29, PageID.206).  Because this suit was already pending when the interview occurred, the Court determines the party's subjective anticipation was objectively reasonable.  The recording is thus a material prepared in anticipation of trial and is work product.  Because the recording does not contain mental impressions or trial strategy characteristic of

7

opinion work product,[1] the recording is fact work product. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d at 294.

Fact work product is subject to a qualified privilege that may nevertheless be ordered disclosed where the requesting party establishes it has a substantial need for the materials and cannot obtain equivalent information through other means without undue hardship. *Id.*; Fed. R. Civ. P. 26(b)(3)(A). Here, there is no showing of undue hardship because Plaintiff has Ms. Turner's contact information and may obtain the same information through other means. (ECF No. 29, PageID.200; ECF No. 25, PageID.163). Plaintiff does not advance any argument on why they face undue hardship and accordingly has not met his burden of proof. Plaintiff did not oppose Turner's motion for a protective order for deposition by written question, and Plaintiff may take Turner's deposition as discussed below. The Court, therefore, **DENIES** Plaintiff's motion to compel as to the recording.

As to the alleged contemporaneous notes Plaintiff asserts should be compelled, Defendants assert that "Defense counsel did not take notes contemporaneous with the interview; the interview was audio recorded." (ECF No. 57, PageID.1700). Defendants raise this fact for the first time in their objection to the Court's order for an *in camera* review of the notes. (*Id.*). That

---

[1] The Court preformed an *in camera* review and determined the interview is a mere recitation of facts and questions.

8

said, given that the contemporaneous notes apparently do not exist, the motion to compel is **DENIED AS MOOT**.

      b. *Motion for Protective Order*

On August 2, 2022, witness Kelly Turner moved for a protective order allowing her to answer all deposition questions in writing only, rather than an in person or zoom deposition as sought by Defendants. (ECF No. 27, PageID.167, PageID.171). Turner asserts a protective order is necessary because she is "currently experiencing health complications that will likely be exacerbated by attending a deposition either in person or via zoom resulting in a high level of stress and potentially triggering a serious potentially life-threatening health crisis[.]" (*Id.*). In her affidavit, Turner states she has heart issues and is recovering from a stroke she had two years ago which she asserts has a four-year healing process. (*Id.* at PageID.180). She is now taking medication for anxiety and blood pressure. (*Id.*). Her affidavit indicates attending "any court proceedings or depositions would put me at risk of another stroke . . . and or worsen my anxiety." (*Id.*). Turner explains that her health conditions suggest she is in a high-risk population for COVID-19 and does not want to expose herself to an environment which would increase that risk. (*Id.*).

Turner's physician assistant provided an affidavit indicating that Turner is "currently being worked up by a cardiologist for recent heart conditions" and that

9

Turner is "regularly seeing a neurologist" following her stroke. (ECF No.27, PageID.175). She also indicates that "[d]ue to [Turner's] many medical appointments and conditions, it would be difficult for her to physically attend court sessions." (*Id*.).

KHPD Defendants oppose the motion for a protective order. (ECF No. 30, PageID.220). KHPD Defendants assert that Turner did not move for protective order until after the scheduled start time of her deposition and her "unilateral" cancelation occurred less than 24 hours before her schedule deposition time resulted in late cancellation fees to KHPD Defendants. (*Id*.). This occurred after KHPD Defendants rescheduled the deposition and moved the deposition to a location closer to Turner. (*Id.* at PageID.221).

KHPD Defendants argue that Turner has failed to show good cause for a protective order because she is able to attend work and has spoken with counsel for KHPD. (*Id.* at PageID.224). KHPD notes that Turner travels further to work each day at Dunkin' Donuts than she would have had to travel to her in-person deposition. (*Id*.). They likewise observe that COVID-19 was "just as prevalent" today as it was when Turner previously gave her statement to KHPD's counsel and Turner's stroke occurred prior to her statement as well. (*Id*.). Defendants also note a "deposition is not a court session" so Turner's physician's indication that it

10

"would be difficult for her to physically attend court sessions" is not sufficient for a protective order.  (*Id.* at PageID.223-24).

KHPD Defendants request that the Court Order Turner to appear for deposition and hold her in contempt should she continue to refuse to participate. (*Id.* at PageID.225-26).  KHPD also seeks sanctions in the form of costs, expenses, and attorneys' fees incurred as a result of Turner's cancelation less than 24 hours before the schedule start of her deposition.  (*Id.* at PageID.226-27).  Defendants seek $495 for the cancelled depositions. (*Id.* at 228).

Defendant Lindquist also opposes Turner's motion for protective order. Lindquist argues Turner's motion "does not address in any fashion why Ms. Turner's state of health makes her unable to sit for a deposition by oral examination" and that Turner's physician's assistant "does not state that Ms. Turner's physical health prevents her from giving oral testimony, or that giving such testimony would [ ] jeopardize her physical well-being."  (ECF No. 31, PageID.281-82).  Defendant Lindquist asserts that Turner has not "supplied an affidavit from a qualified medical doctor opining how the contemplated oral deposition would be detrimental to her health" and that Turner has not made the specific factual showing that the deposition would be dangerous to the deponent's health.  (*Id.* at PageID.283-84).

11

Under Federal Rule Civil Procedure 26(c)(1) the Court may issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Ci. P. 26(c)(1). To satisfy the requirements of Rule 26(c), "the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citations omitted). Furthermore, "[t]o justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and these limits grow more formidable as the showing of need decreases." *Serrano*, 699 F.3d at 901 (quoting 8A Charles Alan Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 2036 (3d ed. 2012)). Courts have broad discretion to determine whether a protective order is appropriate and what degree of protection is required. *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984).

"The district court may limit the scope of discovery 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting Fed. R. Civ. P. 26(b)(1)).

Turner has offered specific information from her physician assistant that she is "currently being worked up by a cardiologist for recent heart conditions" and that Turner is "regularly seeing a neurologist" following her stroke. (ECF No.27, PageID.175). Her physician assistant, likewise, indicates that "[d]ue to [Turner's] many medical appointments and conditions, it would be difficult for her to physically attend court sessions." (*Id.*). Turner herself offers in her affidavit that attending "any court proceedings or depositions would put me at risk of another stroke. . . . and or worsen my anxiety" and explains that her health conditions indicate she is in a high-risk population for COVID-19 and does not want to expose herself to an environment which would increase that risk. (*Id.* at PageID.180). This information constitutes specific facts related to the injury Turner might experience if she is compelled to give a deposition.

13

When the Court considers the limited value of the information that Turner appears to possess regarding the events of July 14, 2021, the burden of the proposed discovery outweighs its likely benefit. While Turner's showing of injury might be weak, her value is so limited as a witness that her showing is sufficient to grant her motion for protective order. Turner has provided a written statement, which is available to both parties, regarding what she witnessed and, in essence, Turner's statement is that she saw a Black man in a hoodie walk by the Dunkin' Donuts while she was working and that the man did not "threaten or do anything to me or my car." (ECF No.27, PageID.178-79). Turner does not claim to have witnessed the alleged harassment of Plaintiff by Defendants. The importance of Turner's testimony in resolving the issues of this case is minimal considering the evidence before the Court that she did not witness the events in contention. Because Plaintiff did not oppose this motion, the Court cannot raise arguments on their behalf. Considering the limited value of this discovery in light of the burden on Turner of allowing this discovery, the Court hereby **GRANTS** witness Kelly Turner motion for a protective order allowing Turner to answer all deposition questions in writing with assistance from her attorney, rather than an in person or zoom deposition. (ECF No. 27, PageID.167, PageID.171).

As to KHPD's request for sanctions in the form of costs, expenses, and attorneys' fees incurred as a result of Turner's cancelation less than 24 hours

before the schedule start of her deposition, the Court **DENIES** the motion for sanctions. (ECF No.30, PageID.228). At any rate, a failure by Turner to comply with this Court's order could result in the application of such.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: January 5, 2023,  s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge